## In re E. S. Foster.[*]

*Habeas Corpus.　Deposition of Adverse Party.　Distance computed by usual traveled route.　Improper Motion.*

The statute allowing a party to examine the adverse party as a witness, does not confine such examination to testimony given on the stand at the trial, but it makes the party a witness as illimitably as any other person, and more so, as he may be examined in his direct examination under the rules governing cross-examinations.

The statute which provides that the depositions of parties to actions, when taken in the manner provided for the taking of the depositions of witnesses, may be used on the trial

---

[*] This case was not heard in the supreme court, but the decision received the concurrence of all the judges of that court, at the February term, 1872, Windsor county, and is reported in this volume of supreme court reports by request.

*In re* Foster,

of such actions, places them on just as broad and unlimited ground in respect to the manner in which their testimony may be given, as they are, in respect to being witnesses.

Sec. 4, ch. 36, Gen. Stats., was not designed to prescribe a limit, having reference to the status of the cause, excepting that the action must have been commenced, and this is accomplished when the writ is served.

The distance, as affecting the right to take and use a deposition of a witness, is to be computed upon the way of usual travel from the residence of the witness to the place of trial; if, computed in that way, it is more than thirty miles, it is sufficient cause for taking the deposition. And in this proceeding the relator must stand on the same ground and rule as he would in court on the trial of the cause, under the objection to the admissibility of the deposition for the alleged reason that the deponent did not reside more than thirty miles from the place of trial.

If a witness, while giving his deposition, refuses to go on and do all that is necessary to be done on his part in order to constitute the document a perfected deposition, his refusal is in law a refusal to make his deposition within the terms and meaning of the statute.

Where a party is proceeding according to the provisions of the statute to take the deposition of the adverse party, his right to take it, or the duty of the adverse party to make it, does not depend upon the intention of the party to use the deposition on trial. A party is not precluded from standing upon and exercising a legal right because he is prompted by an improper or unworthy motive.

HABEAS CORPUS. The relator brought his action of slander against G. P. Spaulding, and the writ was served on the 8th day of September, 1871. On the 11th day of said September, Spaulding caused a citation to be served on Foster to attend on the 14th of September to the taking of his (Foster's) deposition, to be used in said cause, and Foster was duly summoned as a witness, and his fees as a witness were duly tendered. Foster appeared before the magistrate, Hugh Henry, in pursuance of the citation and summons, and the taking of his deposition proceeded on different days fixed by the agreement of the parties, till the 24th day of October, when, on the 181st question being put to him, he refused to answer, assigning as a reason, " that he is advised by his counsel that no cause exists for taking his deposition, and pursuant to their advice he refuses to answer." Down to that question he had answered without objection, and to answering that question he assigned no other objection than the one above stated. The magistrate apprised him that if he persisted in refusing to answer, it would be his duty to commit him to jail, as provided by statute in such case, and thereupon issued a warrant, on which the relator was committed on said 24th day of October. On the same day the writ of *habeas corpus* was granted and the hearing continued to the first Tuesday of December,

1871, on which day the county court was in session, and the matter was adjourned into that court, all parties consenting, and it was there fully heard, and was held by the court for advisement, to enable the presiding judge to confer with the other judges of the supreme court upon the questions of law involved. At the February term of the supreme court, 1872, of Windsor county, with the concurrence of all the judges of the supreme court as to the matters of law, the following opinion was read by

BARRETT, J. On the hearing, as touching the lawfulness of the proceeding to take the deposition, it was made a point that Foster did not reside thirty miles from the *court-house*, the place of trial, and evidence was introduced on the subject. In respect to this the court find that, by the highway of usual travel between the residence of Foster in Chester, and the court-house in Woodstock, the distance is a little more than thirty miles; that there is another road which can be traveled from his residence for some five or six miles, to its intersection with the highway first named, by which the distance to the court-house is a little less than twenty-nine miles; but said last-named road is not usually and is but seldom traveled by persons destined from the one place to the other, being considerably more hilly than the other, though not defective in its surface; that for more than forty years it has been customary to take and use in the county court, without objection or question, depositions of witnesses residing in said town of Chester, and in both the north and south villages, between which villages said Foster resides, and further from the court-house than the north village.

It was also made a point on which evidence was given on both sides, that the magistrate was disqualified to act as magistrate in taking the deposition, by reason of having been attorney of Spaulding in the slander suit. On this subject the court find that, some time before the suit was brought, Spaulding had heard that such suit was threatened, and said to Henry that if Foster should apply to him to make the writ, he wished him to tell Foster that he was retained by Spaulding, and Henry said he would; that Henry did not regard himself as thereby retained by Spauld-

ing, or thereby to have become his attorney, and made no charge, nor suppose he had a right to make a charge, against him on that score ; that Foster did not apply to Henry to make such writ, but procured Judge Pingry to make it ; that afterwards, and before commencing the proceeding to take Foster's deposition, Spaulding told Henry that he had employed Mr. Adams as his attorney in said suit, and did not wish to employ him, (Henry), as he could not afford to employ more than one lawyer, which suggestion was satisfactory to Henry, he regarding Spaulding as under no obliga- tion to employ him by reason of what had passed between them as above stated, and has never made any charge or claim against Spaulding, nor supposed he had any right to.

The other facts involved are shown by the papers.

The ground of the writ is, that the imprisonment of the relator is unlawful. Whether it is so, is the subject of inquiry. Sec. 12, ch. 36, Gen. Stats., is, in terms, in case the witness, appearing and having been tendered his legal fees, shall refuse to make his deposition, the " justice or other magistrate, by his warrant, shall forthwith cause such witness to be committed to jail, there to re- main until he shall make his deposition as required, and discharge the costs of commitment." In this case the witness was before the magistrate, having had his legal fees tendered him, and was in the process of giving the deposition. In these respects, then, he answered to the conditions of the statute just repeated.

On the hearing, it was claimed and argued in his behalf that, as an *adverse party*, he could not be compelled to testify in be- half of the other party by deposition, but only orally on the stand in open court, on the trial of the cause. As bearing on the construction and meaning of the statutes in this respect, *Arm- strong, Adm'r,* v. *Griswold,* 28 Vt., 376, was cited. The act of 1852, permitting parties to be witnesses, was then alone in force on the subject. The question in that case was whether a party could, under sec. 1 of that act, testify by deposition in his own behalf. The court held that he could not, as there was no pro- vision of statute to that effect, and that, in view of the practice in cases where parties had theretofore been witnesses, it was infera- ble that it was expected and intended that the same practice

should prevail in cases under said section one. This inference, in the view of Judge REDFIELD, seemed to be countenanced by section two of said act, as to compelling adverse parties to testify, said section being the same as sec. 25, ch. 36, Gen. Stats. That section was in no respect in question in that case, and so the remark of Judge REDFIELD is not to be regarded as indicating any decision or opinion of the court upon it. That section is confined exclusively to the matter of compelling an adverse party to testify. The language of it in no manner indicates that he might not be compelled to testify by deposition in any case in which any other witness might be called on and compelled to testify by deposition. But it is not necessary to pass on that section in this case, only so far as it operates to compel an adverse party to be a witness. In that respect and to that intent he is just as illimitably a witness as any other person, and rather more so, for he may, on the direct examination, be questioned as on a cross-examination. By the first two sections of the act of 1852, (incorporated into secs. 24 and 25, Gen. Stats., ch. 36,) both parties became indiscriminately witnesses in the causes embraced within the sections, in behalf of each other as well as of themselves.

Thus the law stood down to 1855, when clause 7 of sec. 3 of the Gen. Stats., ch. 36, was enacted, to the effect that the deposition of any of the parties to actions, when taken in the manner provided for the taking of depositions of witnesses, may be used on the trial of such actions. Here is no discrimination of parties on account of their relation respectively to the pending action. They are placed by this clause on just as broad and unlimited ground, in respect to the *manner* in which their testimony may be given, as they are in respect to being witnesses for themselves and the adverse party by the act of 1852. It is a mistake to suppose, as was suggested in the argument, that the act of 1855 was suggested by the decision cited above, or was designed to operate solely to the intent of enabling a party to testify by deposition in his own behalf. That decision was made in June, 1856. The cause was tried in the county court in June, 1855, and the deposition admitted. And on the slightest reflection it seems plain that, in order to render available the language and

*In re* Foster.

policy of the statute subjecting an adverse party to testify as a witness in behalf of the other party, the reasons are fully as strong and as numerous, why his testimony may be taken by deposition, as why it should be so taken in his own behalf. It is needless to specify such reasons. The court is unable, therefore, to sustain the relator in this ground and reason for refusing to give his deposition.

It was made a point in the argument, though not urged with much confidence, that the deposition could not lawfully be taken, because, under sec. 4, ch. 36, " a reasonable time after suit commenced" had not elapsed when Spaulding commenced his proceedings for taking it. We think that provision has reference to the notices to be given, and the ability of parties, under attending circumstances, to attend on the taking. It was not designed to prescribe a limit, having reference to the *status* of the cause, excepting that it must have been *commenced*, and that is accomplished when the writ is so served as to render the defendant subject to the consequences as a party. It was by no means designed to make such " reasonable time " to depend on the fact of issue having been formed in the cause, as was claimed in the argument.

It was made a prominent point in the arguuent, that the deposition could not be lawfully taken because the relator did not reside more than thirty miles from the place of trial. In the opinion of the court, the distance, as affecting the right to take and use the deposition of a witness, is to be computed upon the way of usual travel from the one point to the other, viz : the residence of the witness and the place of trial. Such has been the uniform understanding and practice of courts and lawyers in this State. For the purposes of the point in this case, the relator must stand upon the same ground and rule as he would stand in court on the trial of the cause under an objection to the admissibility of a deposition for the alleged reason that the deponent did not reside more than thirty miles from the place of trial. In such case the usual road of travel has always been regarded as the one to be measured, either in fact, or by usage and common understanding. It is needless, in this view, to express any opinion as to the effect of usage on the question of distance.

As to the disqualification of the magistrate for the alleged reason that he was, or had been, attorney for Mr. Spaulding : it is the actual relation between the magistrate and the party that is to be regarded in determining the question of disqualification. What was such relation depends on what was the understanding between them in that respect, in connection with what took place. What took place did not of itself necessarily constitute between them the relation of attorney and client. It did not on its face purport so to do, but only to provide that in a certain possible contingency, over which neither party had any control, and which was as likely not to happen as to happen, Mr. Henry would ·become the attorney of Mr. Spaulding. It is in clear proof that neither of them understood that Mr. Henry had become the attorney of Mr. Spaulding. Before the proceeding to take the deposition was instituted, the happening of the contingency had become impossible, and any expectation of becoming attorney, that might have existed in Mr. Henry's mind from what had passed between him and Spaulding, was extinguished by Mr. Spaulding telling him that he could not afford to employ him as his attorney, as found in our statement of facts. We are not embarrassed as to the matter of fact in this respect, by the seeming conflict in the testimony. We can account for such conflict without imputing false swearing to any one, and we are clear in our own minds as to what the fact really was.

We hold, then, on the facts proved, that there was lawful occasion for the taking of the relator's deposition, and that the magistrate was not disqualified, and had lawful authority to take it. Having jurisdiction of the subject matter and of the party, did the magistrate exercise that jurisdiction unlawfully ? It will be presumed that he acted lawfully in his official acts ; and the burden is on the relator of showing that he did not. We do not base our results on, nor pass upon the questions of, the conclusiveness of the magistrate's adjudications as was claimed in behalf of Mr. Spaulding, but on the facts disclosed by the evidence. It is claimed that the relator did not refuse to make his deposition. The warrant of commitment, which is the record in summary proceedings of this kind, states that he did so refuse. It seems to us

that the evidence, instead of showing the contrary, shows the truth of the record. His refusal was not to answering a particular question, either on account of its form or substance; but it was to answering in the further giving of his deposition, as is plain from the reason he assigned, viz.: "that he is advised by his counsel that no cause exists for taking his deposition, and pursuant to their advice, he refuses to answer." At this stage he had not made his deposition. He had been proceeding in the act of making it, but, before his examination was completed, he refused to go on. So his deposition has not been made. It is neither subscribed nor sworn to. It lacks several necessary essentials to give it the character of a deposition. The statute contemplates that the witness shall do all that is necessary on his part in order to constitute the document a perfected deposition according to the provisions of the law in that behalf. If the witness stops short of this, and, by his refusal to go on, the document fails of becoming a deposition, it *is* a refusing to make his deposition within the terms and meaning of the statute.

It is claimed that the matter of the question last put to the relator is irrelevant, and therefore he is justified in refusing to answer. It is to be remarked that he did not put his refusal to the magistrate on that ground, but on a totally different one; and one going to, and denying, the right to take his deposition at all. The magistrate's action is to be referred to the ground and reason for the refusal asserted before him, so far as it was his province to consider and adjudge the right of the witness to refuse, as exempting him from being committed for such refusal. But without deciding or discussing what function the magistrate has in passing on the matter of relevancy as affecting the witness's duty to answer, it is sufficient for present purposes to say, that in looking into the declaration, and more particularly in what is called in argument the general count, it cannot now be determined that the subject of the last question is irrelevant. It is easy to conceive that it may be very pertinent, and the facts sought to be elicited material for the defence.

In the argument it was insisted that the defendant in the slander suit was taking the deposition to help him in determining upon

*In re* Foster.

his line and mode of defense, and not with the purpose of using it as evidence on the trial; and therefore he had no right to take it.

In regard to this it seems proper to say that said defendant was proceeding according to the provisions of the statute in the taking of the deposition of the adverse party in the pending suit. His right to take, and the duty of the relator to make, his deposition, does not depend on the contingency of its being used on trial, or on the existence of the settled and exclusive purpose to use it as evidence on the trial. It may readily be conceived that it might become important to be used as evidence; and again, that there might be no occasion to use it—depending on circumstances existing at the time and in the progress of the trial. We think it the unquestionable right of a party to take a deposition in view of possible or supposable contingencies, to be used or not, as should seem expedient on the trial. Though in this case counsel for Mr. Spaulding admit that an important, but not exclusive purpose of taking the deposition, was to get light that would aid in determining what form and substance of defense to adopt in the pleadings to some parts of the declaration, still it is impossible to hold such purpose to be unlawful, in such sense as to deprive him of the right to take the deposition at all, usable as it might be for important purposes as evidence on the trial.

It is quite familiar doctrine that a party is not precluded from standing upon and exercising a legal right, because he is prompted to do so by an improper or unworthy motive. It becomes needless for any purpose of the present case, therefore, to make any intimations as to supposable cases, in which the purpose of taking a deposition might countervail the right of the party to take, or the duty of the witness to make, his deposition under the statute. Upon the facts and evidence this is not such a case.

Upon the views thus presented, no occasion exists of considering or discussing the mixed character in which an adverse party stands when called on as a witness by the other party, in reference to the right to question the relevancy of the examination, before the magistrate taking the deposition, or to refuse to answer, or to refuse to make his deposition; for, having reference to his duty

under the statute to make his deposition on the requirement of the other party, we do not see that such mixed character relieves this relator from such duty in the present case.

The relator is therefore remanded to the custody of the jailor.

*Charles N. Davenport*, for the relator.

*Luther Adams*, contra.